## SHAPIRO v. NADLER.

(Supreme Court, Appellate Term.    June 28, 1906.)

1. BROKERS—COMPENSATION—RIGHT TO COMPENSATION—SUFFICIENCY OF SERVICES.

A broker employed to procure a purchaser of real estate must to recover his commissions show that he procured a purchaser able and willing to enter into a contract for the purchase of the property on terms satisfactory to the owner.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Brokers, §§ 75–81.]

**2. SAME.**

In an action by a broker for commissions for procuring a purchaser, it appeared that a person procured by the broker entered into a contract with the owner, which recited that the owner had received a specified sum as deposit on the sale of real estate for a specified sum and two mortgages, and that the contract should be closed at a specified date; the owner agreeing to accept a specified sum cash, and the balance to be agreed on by contract. The parties failed to enter into any further contract, three mortgages being on the property instead of two. The broker applied for and obtained an extension of time in which to find a purchaser. He found no purchaser. *Held*, that he was not entitled to his commissions.

**3. SAME.**

In an action by a broker for commissions for procuring a purchaser, it appeared that a person procured by the broker entered into a contract with the owner, which stipulated for the sale of the real estate for a specified sum and two mortgages, and required the closing of the contract at a subsequent date. The parties failed to close the contract because of the existence of a third mortgage on the premises. *Held*, that the broker was not entitled to his commissions, the person procured by him having no right to absolutely refuse to enter into a contract for the purchase of the property subject to two mortgages only, when the owner was able to perform the contract when the time for the passing of title arrived.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Brokers, § 97.]

Appeal from Municipal Court, Borough of Manhattan, Ninth District.

Action by Isaac Shapiro against Wolf Nadler. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, LEVENTRITT, and McCALL, JJ.

Henry Fluegelman, for appellant.

Engel, Engel & Oppenheimer, for respondent.

GILDERSLEEVE, J. The plaintiff in this action recovered a judgment for $300, alleged by him to have been earned as commissions for services as a broker in selling some property owned by the defendant. The plaintiff's version, which the jury evidently believed, is that he asked the defendant to fix a price upon two pieces of property owned by him, and being Nos. 216 and 218 East Ninety-Ninth street. Defendant fixed the price at $47,000. Being unable to find a purchaser at that price, he told the defendant that one Portman would pay $46,000, and asked leave to bring about a personal interview between Portman and the defendant. This interview took place on April 11, 1904. The plaintiff says that he introduced Portman to the defendant, and said, "Here is a purchaser for your property who will pay $46,000." He then testifies that he was called aside by the defendant, and the defendant agreed to pay the plaintiff $300 commission if a sale was made, and that subsequently Portman and the defendant agreed upon the price at $46,300. In this he is evidently mistaken, as it appears that at that time a written agreement was made between the parties, which reads as follows:

"Ressiv from Ike Portman one hundred ($100) dolars as deposet for bisniss transaction for seling 2. hoses loketet at 216-218 E. 99 st for the sum of $46,600 fortie six tosand and six hondered 1st morg $26000. 5% 2nd morgit

$11,500 6% as the oner garanteet with the mortgetsey lot 50 X 100-11 more or lest.  Contract to be clost at 15 dav of April .1904 at 309 Brodway morgits 216 standing 4 years 218 standing for 3 yers and the oner agrees to except $8,000 cash and balans mts vil be agreed by contract.

"Wolf Nadler.
"Ike Portman."

At the time the foregoing was signed the defendant gave to the plaintiff a writing, agreeing to pay him $300 commission "to sell propatie" at the date of closing contract "at April 15 dav 1904." Upon April 15th, the day fixed for the making of the final contract, the parties appeared, together with one Weiner, the secretary of the Penn Realty Company, for which company it appears that Portman was in some way acting, and one Bach the attorney for the defendant. There is a conflict of testimony as to what took place at this meeting; the plaintiff's contention being that a contract was being drawn, dictated by the defendant, when the attorney for the realty company said to defendant:

"You have dictated the contract, saying that there is a first mortgage and a second mortgage and a third mortgage. Now in this paper [referring to the agreement between Portman and the defendant], as I understand it, you say that we contract to purchase this property from you with a first mortgage of $26,000 and a second mortgage of $11,500, and then to take the purchase money for the balance of $8,000, and we will not pay more than the $8,000. Now we have three mortgages on the property. We are ready to carry out our contract as we agreed on the day we gave you the $100 as a binder, but we cannot purchase this property on four mortgages."

The matter was then adjourned until the next morning, when the parties again met, and the plaintiff claims that the attorney for the defendant then notified the plaintiff and his party that:

"We cannot give you anything else than we have got. We have got this property with three mortgages. If you want to take it, go ahead; if not, the deal is off."

Portman, in narrating the transaction with the defendant, testifies that:

"We agreed on 46,600. That was subject to 26,000 first mortgage, 11,500 second mortgage, and I also said I. would not put in more than $8,000 cash, because we had a resolution of the Penn Co. to put in no more than 8,000, and we agreed on 8.000 cash and the balance to be in three mortgages."

He also testifies that he informed the defendant that he was purchasing for the Penn Company. His testimony as to what took place at the meeting of April 15th does not materially differ from that of the plaintiff, except that he states that he was ready, able, and willing to enter into a contract according to the terms of the writing executed on April 11th. The defendant and his witnesses contradicted the testimony given on the part of the plaintiff, and aver that the defendant was ready to give a contract subject to the two mortgages named in the writing of April 11th, which the realty company refused to accept. The defendant also shows, and it is not disputed by the plaintiff, that after the negotiations for the sale to the realty company fell through, that Portman and the plaintiff came to the defendant, and asked for further time in which to enable them to find a purchaser. This was granted, and the new purchaser failed to purchase, and subsequently the defendant sold the property. No rule has been made plainer nor laid down

more frequently by the courts than that a broker's right to commissions depends upon bringing the buyer and seller to an actual agreement, not a prospective or contemplated one. Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, 38 Am. Rep. 441. The written instrument of April 11th was indefinite and uncertain in its terms, and was, in effect, only an agreement that upon April 15th a formal contract should be made. To earn his commissions it was incumbent upon the plaintiff to show that he had produced a purchaser able and willing to enter into a contract for the purchase of the property, and upon terms satisfactory to his employer. This he did not do. He did not even bring a man with whom a contract of sale was made. Assuming the testimony given by the plaintiff and his witnesses to be true, there was nothing that occurred between the parties when they met on April 15th showing or tending to show that the defendant failed in any way to enter into a contract for the sale of his property for the price fixed in the agreement, and subject to the only mortgages which the proposed purchaser had agreed to accept. The fair construction of the agreement is that the defendant agreed to sell his property for $46,600, with two mortgages thereon, aggregating $37,500, $8,000 in cash, and the balance, of $1,100, to be agreed upon on April 15th. It will be seen that the agreement of April 11th is indefinite and uncertain, and that material portions of the final contract is left open to future agreement. Portman seems to have had but little to do with the contract, and neither he nor the realty company tendered performance, or offered to enter into any final contract which embraced the terms contained in the April 11th agreement, according to their own construction of it. The respondent herein concedes that to entitle the plaintiff to recover he must have produced a customer who will purchase upon the specific terms mentioned by the owner. This was not done in the case at bar. The minds of the parties never met. As the plaintiff's commissions were dependent upon a sale of the property through his efforts, and as no binding contract for a sale, much less a sale, was made, he was not entitled to recover. That neither he nor Portman, who was not the real purchaser, considered that any sale had been made, or that the defendant was in any way responsible for the failure to consummate an agreement for a sale on April 15th, is evidenced by their application for and obtaining an extension of time in which to find a purchaser. It further appears from plaintiff's own showing that the realty company refused to enter into any contract because there appeared to be a third mortgage, of what amount does not appear. This was not a ground for an absolute refusal to enter into a formal contract, conditioned that they should take title to the property subject to only two mortgages, for the reason that the ability of the defendant to perform the terms of such a contract could only be determined when the time came for the passing of the title, and could not be questioned at the time the contract was being entered into. Nor in such a case is the vendee relieved from the necessity of making a tender and demand of performance. Ziehen v. Smith, 148 N. Y. 558, 42 N. E. 1080. And it was shown without dispute that the defendant was able to pay off any existing mortgages upon the property, and this it may well be assumed he would have done before he gave title.

The judgment must be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.